**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————
                        :

SALVATORE AURELIO, et al.,      :
                        :
           Plaintiffs,     :
     v.                         :     CIVIL ACTION NO. 06-3146 (JLL)
                        :
BOARD OF EDUCATION OF THE     :
BOROUGH OF CARTERET,        :
et al.,                         :     **OPINION**
                        :
          Defendants.     :
———————————————————————  :

**LINARES**, District Judge.

Pending before this Court is Defendants' motion for summary judgment as to all counts. Plaintiffs have filed opposition, and the Court considers the motion on the papers pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, Defendants' motion is GRANTED.

**I.**    **Factual History**

Plaintiff Salvatore Aurelio alleges deprivation of his rights pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment, and New Jersey's Law Against Discrimination ("NJ LAD").  His wife, Kathleen Aurelio, alleges a violation of the NJ  LAD for assisting and encouraging her husband to exercise his rights.  The facts are as follows.

Salvatore Aurelio has been employed by the Carteret Board of Education as a maintenance worker for 8 years.  (Defs. SOF ¶ 10A.)  He is also a member of the Union, the Carteret Education Association ("CEA"), and has been an elected union representative for six

1

years.  (Defs. SOF ¶ 10B.)  The membership of the CEA had voted in favor of a "work to rule"

obligating its members not to do any work, labor or services in excess of the requirements set

forth by the collective negotiations agreement between the CEA and the Board of Education of

the Borough of Carteret ("Board").  (Id. ¶ 5.)

On January 31, 2006, Salvatore Aurelio's supervisor requested that he fix a heating

problem at the Columbus School.  (Id. ¶ 6.)  At approximately 8:10 a.m., he saw Ms. Allyson

Thompson, a fourth-grade teacher, in the school.  (Id. ¶ 10G.)  He then saw her again outside the

main office while he was waiting to advise another teacher that the heating problem had been

fixed.  (Id. ¶ 10G.)  Mrs. Thompson asked to speak to Mr. Aurelio.  She told Mr. Aurelio that if

he was there to put her name on a list for violating the "work to rule" (because she was working

in the school earlier than 8:25 a.m.), she and her husband would sue him.  (Id. ¶ 10I.)  Mr.

Aurelio responded that he was only there to fix a heating problem.  (Id. ¶ 10J.)  Eventually,

however, the conversation escalated in tone as both parties began to get upset.  (Id. ¶¶ 10K-M.)

At some point during the conversation, Ms. Thompson alleges that Mr. Aurelio told her

to "F" herself.  (Id. ¶ 7.)  The entire exchange took place in the presence of the general public

including children and their parents.  (Id. ¶ 10O.)  Mr. Aurelio denies having ever used the "F"

word.  (Id. ¶ 10P.)

Upon allegedly hearing Mr. Aurelio use the "F" word in front of students, Ms. Thompson

filed a Complaint with Kathleen Skobo, the Affirmative Action officer, alleging that Mr. Aurelio

had harassed her.  (Id. ¶ 11.)  On the day of the incident (January 31, 2006), the principal of the

Columbus School, Lamont Repollet, conducted an investigation and determined that Mr.

Aurelio's actions were unbecoming of a professional and that students, parents, and staff had

2

been subjected to behavior unsuitable for an elementary school environment.  (Defs. SOF ¶ 13;

Motion for Summary Judgment, Exh. E (Docket Entry # 18-6 at 20.) Ms. Skobo then undertook a

lengthier investigation.  She interviewed some witnesses to the incident, though Plaintiff argues

that she did not conduct an investigation of all witnesses present at the scene.  (Defs. SOF ¶ 12.;

Pl. SOF ¶ 2.)  Ms. Skobo also met with Mr. Aurelo and advised him of the allegations against

him.  (Id. at 8.)  She then asked him to forward a written statement outlining his side of the story

regarding the January 31, 2006 incident.  (Id. at 18.)  Mr. Aurelio complied by delivering his own

statement of the events in question.  (Id. at 19.)  On February 27, 2006, Skobo issued a report

concluding her investigation and finding that four witnesses had corroborated the finding that

"Mr. Aurelio did indeed harass and intimidate Mrs. Thompson on the morning of January 31,

2006."  (Id. at 9.)

On February 21, 2006, Mr. Aurelio received a letter from Kevin A. Ahearn,

Superintendent of the Carteret Public Schools, advising him that a Board meeting had been

scheduled for February 27, 2006.  (Pls. Opp. Br., Exh. G.)  The letter also informed Mr. Aurelio

that the Board "may retire into closed session to discuss a matter which could affect your

employment status with the Board."  (Id.)  On March 14, 2006, Mr. Ahearn sent Mr. Aurelio a

letter confirming that the Board – at its February 27, 2006 meeting – had accepted Ms. Skobo's

findings and had decided to transfer Mr. Aurelio to the late shift (1 PM - 10 PM).  (Motion for

summary judgment, Exh. E (Docket Entry # 18-6 at 24.)

Mr. Aurelio's wife, Kathleen Aurelio, was employed full-time as a teacher's aide at the

Columbus School from September 1, 2003 to June 30, 2006.  (Id. ¶ 8.)  When the incident

involving her husband occurred, Ms. Aurelio was in the third year of full-time employment.  (Id.

3

¶ 14E.)  At that time, Ms Aureilo was non-tenured but she would have been up for tenure in September 2006. (<u>Id</u>. ¶ 14F; Pl. SOF ¶ 12.)  During her three years of employment, Mrs. Aurelio received two negative evaluations, one dated March 21, 2005 and another dated March 31, 2006. (<u>Id</u>. ¶ 17.)

In April 2006, the Carteret Board of Education budget did not pass, thereby requiring the Superintendent not to renew the contracts of 32 non-tenured employees, including that of Mrs. Aurelio.  (<u>Id</u>. ¶ 18.)  Thus, Mrs. Aurelio was not re-hired for the 2006-2007 school year.  (<u>Id</u>.)  In May 2006, the Board rehired five of six of the fired third-year professionals.  (Pl. SOF ¶ 13.) The only person not re-hired was Kathleen Aurelio.  (<u>Id</u>.)

## II.   <u>Standard</u>

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial.  <u>Id.</u> at 324.   In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).   Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions,

bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v.

N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts

and their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

III.    **Analysis**

    **A.**    **Salvatore Aurelio's NJ LAD Claim**

Count II of the Complaint alleges that Defendants violated the NJ LAD by treating Mr.

Aurelio differently because of his sex.  Under the NJ LAD, it is unlawful for "an employer,

because of the ... sex ... of an individual ... to refuse to hire or employ or to bar or to discharge or

require to retire ... from employment such individual or to discriminate against such individual in

compensation or terms, conditions or privileges of employment ...."  N.J.S.A. § 10:5-12 (2008).

The starting point for an action brought pursuant to the LAD is the framework outlined by the

Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.

Ed. 2d 668 (1973).  See Monaco v. American General Assur. Co., 359 F.3d 296, 300 (3d Cir.

2004) ("The Supreme Court of New Jersey has explained the three-step burden shifting analysis

'as a starting point' for analysis of claims under the NJLAD.") (citing Bergen Commercial Bank

v. Sisler, 157 N.J. 188, 210, 723 A.3d 944, 955 (N.J. 1999).  The three-step McDonnell Douglas

analysis is as follows.  First, a plaintiff must establish a *prima facie* case of discrimination.

Monaco, 359 F.3d at 300.  Once the plaintiff does so, the burden shifts to the defendant to

articulate a legitimate non-discriminatory reason for the adverse employment action.  Id.  Finally,

if the defendant meets its burden, the plaintiff must then "discredit the defendant's proffered

reason for its action or adduce evidence that discrimination was more likely than not a motivating

or determinative cause of the adverse employment action."  Id.

To establish a *prima facie* case of discrimination under the NJ LAD, a plaintiff must demonstrate that he or she (1) belongs to a protected class; (2) was performing his or her job; (3) suffered an adverse employment action; and (4) similarly situated persons outside his or her protected group were treated more favorably giving rise to an inference of discrimination. Geldreich v. American Cyanimid Co., 299 N.J. Super. 478, 499 (App. Div. 1997); Devine v. Prudential Ins. Co. of America, No. 03-3971, 2007 WL 1875530, at *20 (D.N.J. June 28, 2007). However, in a reverse discrimination case where the plaintiff is not a member of the protected class, the New Jersey Supreme Court has modified the first prong of the four-part test "to require the plaintiff to show that he has been victimized by an unusual employer who discriminates against the majority."  Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 551, 569 A.2d 793, 799 (N.J. 1990).  Plaintiff argues that the modified standard outlined in Erickson is no longer good law in light of the Third Circuit's decision in Iadimarco v. Runyon, 190 F.3d 1514 (3d Cir. 1999).  This is incorrect.

In Iadimarco, a white male employee sued the Postal Service under Title VII and alleged "reverse discrimination" after he was denied a requested promotion.  Id. at 154.  In an absence of guidance from the Third Circuit, the district court noted a split among courts of appeal as to whether or not a plaintiff alleging reverse discrimination must plead additional prerequisites. Concluding that a plaintiff must show "the requisite background circumstances" to support an inference that the employer is the unusual one who discriminates against the majority, the district court granted summary judgment to the defendant.  Id. at 155.  The Third Circuit reversed. Rejecting the "background circumstances" requirement adopted by a few other circuits, the Third

Circuit held as follows: "all that should be required to establish a *prima facie* case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Id. at 161.  Thus, in this Circuit, a plaintiff pleading a reverse discrimination claim under Title VII need not allege or meet a heightened standard with respect to the circumstances of the employer.

Here, however, plaintiff alleges discrimination pursuant to the NJ LAD.  Post-Iadimarco New Jersey courts have continued to follow the heightened standard set forth in Erickson.  See, e.g., Flizack v. Good News Home for Women, Inc., 346 N.J. Super. 150, 158, 787 A.2d 228 (App. Div. 2001); Oakley v. Wianecki, 345 N.J. Super. 194, 201, 784 A.2d 727 (App. Div. 2001); Glavan v. City of Irvington, No. L-6270-02, 2008 WL 2840881, at *6 (App. Div. July 25, 2008) (altering analytical framework where plaintiff is not member of the minority and requiring plaintiff to show that "she has been victimized by an unusual employer who discriminates against the majority").  Thus, in New Jersey, the Erickson standard remains the law.  Plaintiff must set forth evidence showing that the Carteret Board of Education discriminates against males.  He fails to do so.

Mr. Aurelio cites to no credible evidence in support of the Erickson standard.  The only evidence he provides is an unsubstantiated allegation that a female employee once filed a complaint against the President of the CEA and that after the Board's EEO/AA officer rejected the complaint, it still spent many thousand dollars to investigate the issue anew.  (Pl. Br. 20.) Clearly this type of evidence is insufficient to meet the first prong of the Erickson test, as applied to claims of reverse discrimination.  In fact, in stark contrast to Erickson's heightened standard,

7

Mr. Aurelio himself admitted that he does not know of any history of discrimination against gender groups in the school system.  (Docket Entry # 18-5 at 29 (Deposition of Salvatore Aurelio ("Aurelio Dep.")).  Salvatore Aurelio, therefore, fails to establish a *prima facie* case of discrimination and summary judgment is accordingly granted to Defendants on this Count.

Finally, the Court notes that even if the <u>Erickson</u> standard were not the law in New Jersey, Mr. Aurelio's claims fail to surmount even the lowered <u>Iadimarco</u> test for reverse discrimination.  In that test, Plaintiff would still have to show that he was treated less favorably on account of his sex.  He has provided no evidence in support of such a claim.  The evidence presented in the case shows that an incident occurred on January 31, 2006 between Plaintiff and Allyson Thompson, after which Thompson filed a report of misconduct.  Following an investigation, the Board concluded that Plaintiff had acted improperly in front of students and therefore moved him from the early to the late shift.  The Board specifically found that he had used vulgar language in front of students.  Plaintiff disagrees with the results of that investigation and argues that he never actually used the words in question.  However, even if he were correct, he would not have a claim for sexual discrimination.  Whether or not the Board erred in finding him culpable on January 31, 2006, no evidence suggests that the disciplinary action was related in any way to his status as a "male."  Thus, under both the <u>Erickson</u> and <u>Iadimarco</u> standards, Plaintiff Aurelio fails to state a claim for violation of the NJ LAD.

**B.**     **42 U.S.C. § 1983**

Next, Mr. Aurelio claims that Defendants violated his due process rights when they

unilaterally created an evening position and transferred him to that position without notice.[1]

Plaintiff brings an action pursuant to 42 U.S.C. § 1983 alleging a violation of his due process

rights under the Fourteenth Amendment to the United States Constitution.  Section 1983

provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To recover under § 1983, a plaintiff must show two elements: (1) the

defendants acted under color of state law, and (2) their actions deprived the plaintiff of a right

secured by the Constitution or federal statutes.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40,

49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999).  Here, Defendants acknowledge that their

actions occurred within the confines of their positions as state actors.  Thus, the first element of

the § 1983 analysis is undisputed, and the Court moves to the second  – whether or not Plaintiff

can survive summary judgment as to the alleged deprivation of his Fourteenth Amendment right

to procedural due process.

---

[1] In his opposition to Defendants' motion for summary judgment, Plaintiff for the first time argues a violation of the New Jersey Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. (Opp. Br. 17-18.)  However, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996); Bey v. Daimler Chrysler Servs. Of N. Am., No. 04-6186, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006) ("claims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition to a motion for summary judgment.")  The proper vehicle through which to assert a new claim is to move to amend the complaint pursuant to Fed. R. Civ. P. 15(a).  Because Plaintiff raised this state-law claim for the first time in his opposition to the pending motion for summary judgment, the Court declines to consider it.

To be valid, procedural due process claims must allege the state-sponsored deprivation of a protected interest in life, liberty, or property. Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct 975, 108 L. Ed. 2d 100 (1989). Property interests are defined by state law. Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 92 (3d Cir. 1998). Procedural due process requires notice and the right to be heard before any significant deprivation of a protected property right. Abott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (internal citations omitted). Thus, to state a procedural due process claim, Plaintiff must allege (1) the deprivation of an interest encompassed within the Fourteenth Amendment's protection of life, liberty or property, and (2) that the procedures attendant to that deprivation failed to provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); Lohman v. Duryea Borough, No. 05-1423, 2007 WL 4260943, at *4 (M.D.Pa. Nov. 29, 2007). Here, Mr. Aurelio's claim fails on both elements.

First, he alleges that he was deprived of his "protected property interest in continued employment in the day shift." (Pl. Opp. Br. 15.) However, Plaintiff does not cite to any state statute or law that would allow him to claim day-shift employment as a protected property right. In this case, Mr. Aurelio was simply transferred from the morning shift to the night shift. He received no reduction in pay or benefits and was not suspended for any duration of time. Rather, the Board investigated allegations of misconduct, concluded that those allegations had merit, and moved Plaintiff to a later shift in the day so that he would have less contact with students. This Court finds that Plaintiff does not have a protected property interest in the morning shift as opposed to the night shift, especially when both shifts involve the same benefits and pay. Plaintiff cites to no law or statute indicating otherwise, and thus his due process claim fails.

Moreover, even if the Court found a property interest in the morning shift, Plaintiff's

10

claim would still fail because he does not raise any issue of fact as to whether the procedures provided satisfied due process.  In <u>Gniotek v. City of Philadelphia</u>, the Third Circuit held that pre-deprivation notice is sufficient "1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case."  808 F.2d 241, 244 (3d Cir. 1986).  Additionally, all pre-termination procedures are evaluated against the twin pillars of due process – notice and an opportunity to respond.  <u>Id.</u> (citing <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 545, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494 (1985).  In this case, prior to being disciplined, Mr. Aurelio received both notice and the opportunity to be heard.

During the investigative process, Mr. Aurelio met with Ms. Skobo, whereupon she advised him of the allegations against him.  Aurelio also received a letter from Skobo asking him to submit a written statement giving his side of the story.  He did so.  Additionally, prior to the February 27, 2006 Board meeting, Aurelio received a letter from Superintendent Ahearn alerting him to the fact that his actions would be discussed.  To the extent that he wished to submit anything in writing, he had the opportunity to do so.  In sum, the pre-deprivation procedures, to the extent they were necessary, satisfied due process.  Plaintiff received timely notice of the charges against him and an opportunity to respond.

Moreover, following disciplinary action, Mr. Aurelio filed grievances pursuant to the Collective Negotiations Agreement between the Board of Education and the union.  Those grievances are in arbitration and are ongoing.  "In cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, ... those procedures satisfy due process requirements 'even if the hearing conducted by the Employer ...

11

[is] inherently biased.'" Leneny v. City of Pittsburgh, 183 F.3d 220, 228 (3d Cir. 1999) (quoting

Dykes v. Southeastern Pa. Trans. Auth., 68 F.3d 1564, 1571 (3d Cir. 1995)).  Thus, grievance

procedures outlined in a collective bargaining agreement can satisfy due process requirements.

Id. (citing Dykes, 68 F.3d at 1572 n.6.)  Plaintiff presents no evidence arguing that the grievance

and arbitration procedures afforded him were inadequate.

In short, Aurelio received notice and multiple opportunities to tell his side of the story

prior to disciplinary action, and he has availed himself of post-disciplinary grievance procedures.

Thus, even assuming that he had properly alleged a constitutionally-protected property right, he

does not raise an issue of fact as to the propriety of the due process procedures employed prior to

and following disciplinary action.  Accordingly, Defendants' motion for summary judgment as to

Mr. Aurelio's Section 1983 claim is granted.[2]

## C.    Retaliation

Finally, Defendants move for summary judgment on Plaintiff Kathleen Aurelio's claim of

unlawful retaliation pursuant to N.J.S.A. 10:5-12(d).  N.J.S.A. 10:5-12(d) declares it unlawful for

an employer to "take reprisals against any person...because that person has filed a complaint,

testified or assisted in any proceeding under this act," or who "aided and encouraged any other

_____

[2] In his Complaint, Plaintiff Salvatore Aurelio also alleged a violation of his rights of
"Freedom of Speech and Association."  (Compl. ¶ 1.)  Defendants moved for summary
judgment, arguing that Mr. Aurelio has not submitted any evidence indicating that his rights to
free speech were violated.  (Defs Br. 20.)  Plaintiff fails to address this issue in his opposition
brief, and thus the Court grants summary judgment on that argument.  See Ankele v. Hambrick,
286 F. Supp. 2d 485, 496 (E.D.Pa. 2003) (granting summary judgment after plaintiff failed to
address one of defendant's arguments in his motion for summary judgment, thus resulting in
plaintiff's waiver of the right to contest summary judgment on that ground).  Upon conducting an
independent analysis of the "free speech" argument, the Court agrees with Defendants that
Plaintiff fails to submit any evidence in support of his claim as to this issue.

person in the exercise or enjoyment of any right granted or protected by this act." Thus, Plaintiff alleges that the Carteret Board of Education terminated her employment because she assisted and encouraged her husband, Salvatore Aurelio, in the exercise of his rights under the LAD.

To establish a *prima facie* case of retaliation under the NJLAD, a plaintiff must show: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001). Defendants argue that Plaintiff fails to satisfy any of the three elements.

First, Defendants contend that Ms. Aurelio provides no evidence to support her claim that she actually aided and abetted her husband. This Court agrees. As an initial matter, she certainly never filed a complaint, testified or assisted in any proceeding pertinent to Mr. Aurelio's allegations. Moreover, Mrs. Aurelio does not establish that she ever took steps to aid or abet her husband, nor does she argue that any of the Defendants thought she was helping her husband. Without any evidence suggesting that she took steps to actually help her husband, the Court finds that Ms. Aurelio did not engage in any protected employee activity. Thus, she fails to satisfy the first prong of a *prima facie* case of retaliation.

Next, even if this Court agreed that she had engaged in a protected activity, Ms. Aurelio presents no evidence linking the alleged aid to her husband with the Board's decision to fire her. Rather, she agrees that "[t]he Carteret School District for economic reasons, reduced in force, all non-tenured teachers in the Spring of 2006, after the taxpayers voted against the budget." (Pl. SOF ¶ 12.) However, she argues that the Board chose not to re-hire her in May 2006 because of

13

her alleged support for her husband.  The only evidence in the record pertaining to Ms. Aurelio's dismissal and subsequent failure to get re-hired is that fact that (1) the Board had to cut staff for economic reasons; and (2) Ms. Aurelio had received two negative evaluations – one in 2005 and one in 2006.  Ms. Aurelio fails to adduce any evidence that she was discharged and not re-hired because she "aided and encouraged" her husband to file a discrimination suit or because the Board perceived her as having aided or supported her husband.

Though the Court is mindful of its obligation to view the evidence in the light most favorable to the non-movant, there remains no evidence from which a reasonable jury could infer that (1) Ms. Aurelio engaged in a protected activity; or (2) the Board fired her because of her alleged engagement in a protected activity.  Accordingly, Defendants' motion for summary judgment as to this Count is granted.

**D.     Spoliation**

Finally, this Court recognizes that Plaintiffs, in their opposition to the present motion for summary judgment, requested a spoliation charge related to two pieces of evidence: (1) a hard drive that allegedly contained a videotape recording of the incident between Aurelio and Thompson; and (2) the handwritten interview notes of Kathy Skobo, who investigated the incident and ultimately issued a report finding Aurelio culpable.  Plaintiffs ask for two inferences – the first that the videotape in question "would have shown that Aurelio was not the aggressor and did not lunge at, harass, berate or act in any that was unbecoming" and the second that Ms. Skobo's "report is inaccurate insofar as it relates to her discussion with Aurelio."  (Pls. Opp. Br. 6.)  There is no dispute that the videotape is missing and that Skobo destroyed her handwritten notes, though Defendants argue that Skobo's typed report embodies the contents of her

14

handwritten notes.

The Court denies Plaintiffs' spoliation request for two reasons.  First, the request is irrelevant to the summary judgment analysis conducted as to each of the three Counts alleged. Through their spoliation request, Plaintiffs seek to challenge the actual results of the investigation conducted by Skobo and the Board into Aurelio's alleged actions.  The analysis as to each Count of the present complaint, however, does not change if Plaintiffs are granted their spoliation request, because the issue this Court is not asked to determine whether or not Mr. Aurelio actually uttered the "F" word in front of students.  In other words, this Court is not called upon to decide Aurelio's "innocence."  Rather, it is asked to determine whether Plaintiffs have properly supported claims for discrimination and retaliation under the NJ LAD and for a violation of procedural due process pursuant to Section 1983.

Taking each Count in turn, none of them implicate the rightness or wrongness or the Board's decision that Aurelio was at fault.  In the first Count, this Court has already found that his sex-discrimination claim fails because Mr. Aurelio fails to produce any evidence that Defendants are the rare employer that discriminate against the majority.  Next, as to his Section 1983 claim, the Court finds that Mr. Aurelio has failed to cite to any state law or statute that would protect his right to the day, as opposed to night, shift.  Additionally, Mr. Aurelio fails to allege an issue of fact with respect to any deficiencies as to the pre- and post- deprivation due process afforded him.  And finally, with respect to Ms. Aurelio's retaliation claim, the Court finds that she does not articulate or offer evidence in support of two of the three elements of a retaliation claim – the engagement in a protected activity and a link between that activity and an employer's eventual adverse action.  In all three Counts, the Court's analysis does not change not

15

if the spoliation motion is granted. The issues raised by the spoliation motion are best addressed in Mr. Aurelio's pending arbitration proceeding, where he is actually challenging the finding that he committed harassed and intimidated Mrs. Thompson on January 31, 2006.

Additionally, however, Plaintiffs' spoliation motion fails on the merits. A party must satisfy four elements in order to obtain a spoliation inference. Mosaid Technologies, Inc. v. Samsung Electronics Co., Ltd., 348 F. Supp. 2d 332, 336 (D.N.J. 2004). First, the evidence must have been in the alleged spoliator's control. Id. Second, there must have been actual suppression or withholding of the evidence. Id. Third, the evidence withheld must be relevant to a claim or defense of the party seeking the inference. Id. Finally, it must have been reasonably foreseeable to the alleged spoliator that the evidence would be subject to discovery. Id; see also Kounelis v. Sherrer, 529 F. Supp. 2d 503, 520 (D.N.J. 2008). In this case, Plaintiffs do not cite to these four factors and do not offer facts or argument with respect to any of them. Without more, this Court must conclude that Plaintiffs have failed to satisfy their burden as to all four of the factors necessary to obtain a spoliation inference, and therefore their request is denied. Thus, the Court denies the motion for spoliation on the merits, recognizing however that even a successful showing of spoliation would not change the outcome of the present motion for summary judgment.

## IV.  Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted and this matter is closed. An appropriate Order accompanies this Opinion.

Dated: June 23, 2009                                              /s/ Jose L. Linares_____
                                                                  United States District Judge

16